JOSEPH J. WINCZEWSKI v. WINONA & WESTERN RAILWAY COMPANY.[1]

June 15, 1900.

Nos. 12,171—(123).

**Personal · Injury to Employee—Negligence and Contributory Negligence.**

Personal injury action, in which the evidence is considered, and *held* to sustain the finding of the jury to the effect that the defendant was, and that the plaintiff was not, guilty of negligence in the premises.

Action in the district court for Winona county to recover $5,300 for personal injuries.   The case was tried before Snow, J., and a jury, which rendered a verdict in favor of plaintiff.   From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.   Affirmed.

*Henry M. Lamberton* and *Thomas Simpson*, for appellant.

*Tawney, Smith & Tawney*, for respondent.

START, C. J.

On December 19, 1898, the plaintiff was injured by being struck by pieces of a hand car in a collision between it and the locomotive of one of defendant's passenger trains.   He brought this action to recover damages for his injuries on the ground that they were caused by the negligence of the defendant.   The defense was a denial of any negligence on the part of the defendant, and, further, that the plaintiff was guilty of contributory negligence in the premises.   Verdict for the plaintiff for $1,009.75, and the defendant

1 Reported in 83 N. W. 159.

appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The most important question raised by the assignments of error is whether the verdict is sustained by the evidence. Counsel for the defendant insist that it is not, because the evidence fails to show any negligence on the part of the defendant, but that it conclusively establishes the contributory negligence of the plaintiff. We have reached the conclusion, from a consideration of the record, that the question of the defendant's alleged negligence in running its train at a dangerous rate of speed, and ahead of schedule time, and in failing to check its speed in time to avoid the collision, was one of fact for the jury. The verdict in this respect is fairly sustained by the evidence.

A majority of the court are of the opinion that the question of the contributory negligence of the plaintiff was a question of fact, and that the verdict in this respect is also sustained by the evidence. There was but little conflict in the evidence on this question, and it fairly tends to establish these facts: The place of the accident was that part of the defendant's roadbed and track in the city of Winona lying between the crossing at the track of the Chicago, Milwaukee & St. Paul Railway Company on the east, and Mankato avenue on the west. The defendant's track between these points was approximately a mile and a quarter in length, and consisted of a fill from four to nine feet high, fifteen feet wide on the top, with its sides riprapped. It ran through a level valley, and two-fifths of a mile west from the Milwaukee crossing was a switch known as "Hamilton's switch," at which point the roadbed was about eight feet high. The plaintiff was, and had been for four years, employed as a section man on this part of the roadbed under William Connors, the defendant's section foreman.

On the morning of the accident, the plaintiff, with the foreman, was at Mankato avenue, and they started for the Milwaukee crossing on a hand car, at which point the plaintiff knew that the defendant's passenger train from the west was due in ten minutes thereafter, and not before. He also knew that the trainmen were required to reduce the speed of the train at the crossing of Mankato avenue to eight miles an hour. Both the plaintiff and the

foreman, in driving the hand car, faced to the east, with their backs to the west, whence the train was coming. The plaintiff, before they reached Hamilton's switch, looked back, and saw no train coming; but, after they had passed the switch, he again looked back, and saw the train coming at the rate of thirty-five or forty miles an hour, about thirteen hundred feet away. He immediately jumped on the brake of the hand car, and it was stopped about one hundred feet east of the switch. The foreman jumped from the car, motioned to the plaintiff as he ran towards the switch, taking his keys from his pocket, as if to open the switch, and the plaintiff shoved the car towards the switch. The foreman, however, did not open the switch, but ran back to the end of the hand car towards the approaching train, and lifted that end of the car from the main track to the switch, and the plaintiff lifted the other end upon the switch about eight inches. They succeeded in getting the front wheels and one hind wheel of the car off the main track, and the whole car was within three or four seconds of clearing the main track, when the plaintiff, seeing that a collision was inevitable, let go of the car, and jumped, but when about ten feet away he was struck by flying pieces of the hand car, his leg was broken, and his hip fractured. The foreman stuck to the car, and was killed by the collision.

The defendant claims that the plaintiff was guilty of contributory negligence in leaving Mankato avenue knowing that the train was due at the Milwaukee crossing in ten minutes, and also in driving the hand car with his back to the west, whence the train was coming. Neither act was negligence as a matter of law, for different minds might reasonably draw different conclusions as to the acts of the plaintiff in view of the facts then known to him. Besides, were it otherwise, neither of these acts was the proximate cause of his injury, for he discovered the approaching train in ample time to have saved himself if he had not attempted to get the hand car out of the way of it. It is very clear that if he had thought only of himself when he saw the train coming, and had run away, or even if he had dumped the car down the embankment into the ditch eight feet below, he would have been safe. But because he attempted to get the hand car out of the way of the train, and avoid

the threatened collision, and at the same time to save the car by getting it onto the switch, it is claimed that he was guilty of contributory negligence, and cannot recover for his injuries, although the defendant may have been negligent in the premises.

It must be admitted that the plaintiff and his foreman erred in judgment, but it is easy to be wise after the fact, and the plaintiff's acts must be judged by the facts as they appeared to him at the time. An unexpected emergency arose. The train came rushing upon the car ahead of time, and the situation was one of peril well calculated to disturb his judgment. His first impulse was to avoid the collision, and also to save the defendant's property, without regard to his own safety, and he made the attempt. Can it be held as a matter of law that, because he misjudged the length of time it would take to get the car upon the switch by three seconds, he was guilty of contributory negligence? When employees are loyal to duty, and face known peril to save the property of their employers, and perchance human lives, courts should be very slow in convicting them, as a matter of law, of contributory negligence, after they have been acquitted of the charge by the verdict of a jury. If the plaintiff and his foreman had been run down by the passenger train before they had discovered it, it would be difficult to resist the conclusion that they were thus caught by reason of their own negligence. But such is not this case, for the one was killed and the other injured because, after they discovered their peril, they did not take to their heels, but stopped, and made the attempt to save the defendant's property, and failed by less than four seconds. The question of the plaintiff's contributory negligence, then, was, under these circumstances, a question for the jury.

The other assignments of error have been considered, and found to be without merit.

Order affirmed.

LEWIS and BROWN, JJ. (dissenting).

The evidence is not sufficient to establish defendant's negligence, but it does conclusively establish the negligence of plaintiff.

1. While the plaintiff knew that the timetable stated that the train in question should slow down to eight miles an hour at Man-

kato avenue, he also knew that the rule was not enforced, and that the train was in the habit of running fast all the way down to the tower near to the Milwaukee crossing.   There is no evidence in the case tending to show that the train ever crossed Mankato avenue at any particular time, or at any less than the ordinary speed. · On the other hand, it stands admitted that the schedule time was actually enforced at the Milwaukee crossing at 10:05 a. m., and the time to make the crossing was adjusted by the speed required before reaching the crossing and the time of the stop at the tower. So far, then, as the rule to slow down at Mankato avenue was concerned, it was a dead letter, and the company were not guilty of negligence from the mere fact of running the train at the usual speed between stations (thirty to thirty-five miles per hour) across that avenue, and on past Hamilton's switch to the tower.   And, having no regular time for crossing Mankato avenue, how is defendant chargeable with being ahead of time on the day of the accident?   Plaintiff knew the custom of not slowing down, and knew there was no scheduled time.   There was no evidence of any custom in arriving at that crossing at any particular time, and consequently there was nothing requiring the train to be regulated by the foreman's watch; or, in other words, nothing to prevent it from being two or three minutes ahead of time at that point.

The other act of negligence charged against defendant is that the train was not stopped as soon as it might have been.   The collision took place very near to the east end of the curve, and it appears conclusively that the engineer could not see ahead of the engine more than three hundred to three hundred fifty feet.   He testified that, as soon as he saw the men ahead, he put on the brakes, and brought the train to a stop within about six hundred or seven hundred feet of the place of collision.   There was other evidence tending to show that the train came to a stop at the culvert, a point 1,059 feet from the scene of the accident.   There is no evidence to justify a conclusion that the engineer did not act with reasonable quickness in trying to control the train as soon as he discovered the men, and respondent makes no serious claim to this effect; but it is urged that, if the engineer and fireman had been looking out while on the straight track before entering the

curve from the west they might have seen the hand car before it entered the curve ahead of the train, and so might have been prepared to see them as the train emerged at the east, and could have stopped or slowed up sufficiently to permit the men to run the car back on the switch; and negligence is charged because they did not do so. The train had the right of way, and its managers were chargeable with reasonable diligence in looking ahead. But to assert that they might have seen the men on the straight track a mile or two back, and thus avert the accident, is too conjectural and remote to challenge serious attention.

2. According to the reasoning of the majority, the plaintiff was not negligent in leaving Mankato avenue at the time he did, and in riding along on the hand car with his back to an approaching train as he did, because these acts in themselves were not the proximate cause of the accident; and these acts were not the proximate cause of the accident because plaintiff discovered the train in time to save himself if he had not attempted to save the hand car. But the opinion concedes that those acts were the proximate cause had plaintiff not discovered the train. To quote from the opinion:

"If the plaintiff and his foreman had been run down by the passenger train before they had discovered it, it would be difficult to resist the conclusion that they were thus caught by reason of their own negligence."

So we have an admission that if the men had been overtaken on the curve, or without looking back, then the proximate cause of their injury would have been the fact that they started out ahead of the train, riding as stated. This being admitted, it follows that, if the train was three minutes ahead of time at Mankato avenue, such fact was not the proximate cause of the accident. And it being admitted that plaintiff and the foreman were negligent in riding in that manner around a curve with their backs to an approaching train, it necessarily follows that they were themselves responsible for getting into the position in which they found themselves when they first discovered the train rushing upon them. The logic of the opinion is that, although the plaintiff was guilty of negligence in thus traveling ahead of a fast train which had the

right of way, the responsibility was shifted by attempting, in the emergency thus brought on, to avoid a collision.

It is a well-established rule that the duty of persons in emergencies is not to be measured by the ordinary standard. Application of this principle was made in the case of Slette v. Great Northern Ry. Co., 53 Minn. 341, 55 N. W. 137. In that case the court held that the foreman in charge of the hand car had a right to assume that a wild freight train approaching would slow down at the station. But here the men deliberately stopped their car, and attempted to push it back one hundred feet to a switch in the face of a train then thirteen hundred feet away. If such conduct, under such circumstances, will excuse men upon the principle of emergency conduct, then there are no limits to its use as an excuse. This rule can be applied only where the party charged with causing the injury committed acts which were the proximate cause of placing the injured in the position of emergency. It can have no application where the injured party negligently brought that condition upon himself. Such is this case. The plaintiff took his life in his hands, and, if injured while trying to save a collision by reason of a mistake of judgment as to the time required, that mistake is chargeable only to himself. Hammond v. Chicago, 83 Mich. 334, 47 N. W. 965. A new trial should be granted.